# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CALVIN O. WRIGHT, | Case No.: 2:06-cv-00011-RLH-PAL |
| Plaintiff, | **O R D E R** |
| vs. | (Motion to Dismiss–#19) |
| CITY OF LAS VEGAS, NV; OSCAR GOODMAN; Unknown John and Jane Does, | |
| Defendant(s). | |

  Before the Court is Defendant Oscar Goodman's **Motion to Dismiss** (#19), filed April 27, 2006. The Court has also considered Plaintiff's Opposition (#31), filed July 6, 2006, and Defendant's Reply (#32), filed July 13, 2006.

## BACKGROUND

  In January 2005, Plaintiff Calvin O. Wright ("Wright") decided to write a book about "the most infamous no-limit Texas [Hold 'em] game ever played," in which he participated while in a Kansas federal prison in 1980. (Compl. at 3 ¶ 1.) Wright asserts that Defendant Oscar Goodman ("Goodman"), the current Mayor of Las Vegas, was the criminal defense attorney for one of the gambling participants, Jimmy Chagra ("Chagra"), and that Goodman willingly held the $500,000 prize in trust for the winner. (Compl. at 3 ¶ 1.) Wright also alleges that after the game's

1

1  conclusion, Goodman never paid the prize to either co-winner, Wright or Chagra. (Compl. at 3b ¶
2  1.) Wright claims that he has contacted Goodman on several occasions to collect the money
3  without success. (Compl. at 3-3b.)
4        On February 2, 2005, Wright sent a letter to Goodman asking him to arrange a
5  $75,000 loan in exchange for a one-tenth interest in Wright's book idea on the Texas Hold 'em
6  game, which Wright valued at $500,000. (Compl. at 3-3a.) In addition, Wright required that
7  Goodman place him on the payroll as a "research and development contract consultant" for a
8  guaranteed thirty-six month period at $1800 per week. (Mot. to Dismiss, Ex. A at 3 ¶ 2.)
9  Goodman never responded.
10        Wright claims that on February 15, 2005 Chagra left a message on Wright's
11  answering machine. (Compl. at 3b ¶ 1.) Wright returned the call and discussed the Texas Hold
12  'em book idea with Charga and asked how Chagra obtained his phone number. (Compl. at 3b ¶ 1.)
13  Wright claims that during the conversation Chagra informed him that (1) Goodman gave him
14  Wright's phone number, (2) Chagra represented Goodman regarding the poker game prize and
15  Wright's intention to write a book about it, and (3) Wright could have the entire prize if he could
16  collect it from Goodman. (Compl. at 3b ¶ 1.) Wright then decided to pursue the money.
17        On February 23, 2005, Goodman received a letter in which Wright demanded
18  payment of the $500,000 prize. (Mot. to Dismiss, Ex. B at 2 ¶ 4.) To ensure compliance, Wright
19  threatened to call the National Enquirer if Goodman did not award the $500,000. (Mot. to
20  Dismiss, Ex. B at 2 ¶ 4.) Shortly after sending the letter, Wright claims that Chagra called him and
21  introduced him to an unknown person who claimed that Goodman "'was looking for a way to
22  charge [Wright] with a crime' and that it 'would be best for the plaintiff to forget'" about writing
23  the book. (Compl. at 3c ¶ 1.)
24        In their last telephone call on March 2, 2005, Wright contacted Chagra to inform
25  him that he had filed a copyright for his book idea. (Compl. at 3c ¶ 1.) Wright claims that Chagra
26  threatened him and told him that Goodman was "very upset and angry at the plaintiff" and that

AO 72
(Rev. 8/82)

Goodman had "a lot of power, a lot of clout," and was very well connected. (Compl. at 3c ¶ 1.) In addition, he warned that Wright should "back off from writing the book" or else Goodman might seriously harm Wright or his family. (Compl. at 3c ¶ 1.) Wright further claims that he renounced his intentions to write the book because he did not "want any trouble" from Goodman, who Wright defined as the "Mafia Don" of Las Vegas. (Compl. at 3c ¶ 1, 5 ¶ 2.)

On March 14, 2005, Wright, proceeding pro se, brought suit against Goodman and the City of Las Vegas ("City") in the United States District Court for the Southern District of Iowa ("Iowa Court"), asserting violations of his First Amendment rights pursuant to 42 U.S.C. § 1983. (Compl. at 7 ¶ 1.) Wright claimed that Goodman conspired with Chagra to threaten him, which forced him to abandon his book idea. (Compl. at 5-6.) The Iowa Court granted a motion to dismiss for failure to state a claim against the City and Goodman in his official capacity, finding that "[Wright] has failed to allege Goodman acted under color of law," a necessary element to maintain a § 1983 cause of action. *Wright v. City of Las Vegas*, 395 F. Supp. 2d 789, 800 (S.D. Iowa, 2005). In addition the court dismissed the case against Goodman in his personal capacity on the grounds that service of process was insufficient and the court did not have *in personam* jurisdiction. *Id.* at 804.

On January 5, 2006, Wright filed a Complaint in this Court asserting the same violations of his First Amendment rights under 42 U.S.C. § 1983 as were filed in the Iowa Court. (Compl. at 1-3.) Wright further asserted a violation of 42 U.S.C. § 1985(3), a claim not raised in the Iowa Court. (Compl. at 1-3.) Goodman, in his personal capacity, now seeks to dismiss both counts against him, filing the instant Motion to Dismiss. (Mot. to Dismiss at 1-2.) In a previous order, the Court has dismissed Wright's § 1983 claim against Goodman in his official capacity.

## DISCUSSION

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff

can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Yamaguchi v. U.S. Dept. of the Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997). All factual allegations set forth in the complaint "are taken as true and construed in the light most favorable to [p]laintiffs." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1999). Dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *see also McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988).

Under this standard, the Court now considers each count individually.

**I. 42 U.S.C. § 1983**

To maintain a successful § 1983 action, a plaintiff must establish the following two elements: (1) the conduct complained of must have been committed by an individual acting under the color of law; and (2) the conduct must have subjected the plaintiff to a deprivation of constitutional rights. *Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984). Here, Wright has failed to establish the first element because the doctrine of res judicata binds this Court to the Iowa Court's finding that Wright failed to allege that Mayor Goodman acted under the color of law. Thus, Wright has failed to state a claim upon which relief can be granted.

The doctrine of res judicata bars relitigation of issues that have already been litigated or could have been raised in a prior action. *Sewer Alert Committee v. Pierce County*, 791 F.2d 796, 799 (9th Cir. 1986). To bar relitigation of an action, the following elements must be satisfied: (1) an identity of claims; (2) identity or privity between parties; and (3) a final judgment on the merits. *Headwaters, Inc. v. U.S. Forest Service*, 399 F.3d 1047, 1052 (9th Cir. 2005); *Herb Hallman Chevrolet, Inc. v. Nash-Holmes*, 169 F.3d 636, 644 (9th Cir. 1999).

The Court finds that each element of res judicata is satisfied. First, Wright's Iowa Court § 1983 claim mirrors the § 1983 action brought in the present case, both in the identity of

1  claims and identity of parties.  When comparing Wright's Iowa Complaint with his Nevada
2  Complaint, the Court can clearly discern that Wright has filed precisely the same lawsuit in both
3  Iowa and Nevada, disguised only by the addition of a few defendants and bringing in an additional
4  claim, namely 42 U.S.C. § 1985(3).  However, neither of these additional factors distracts the
5  Court from knowing that Wright has merely attempted to take another stab at the same case in this
6  Court.  *Rosenthal v. Nevada*, 514 F. Supp. 907, 912 (D. Nev. 1981) (stating that the bringing of
7  additional defendants or facts in a subsequent suit does not destroy the existence of identity of
8  parties or claims).
9        Second, the Iowa Court fully adjudicated Wright's § 1983 claim.  A dismissal by a
10 court of competent jurisdiction on Fed. R. Civ. P. 12(b)(6) grounds constitutes a final judgment on
11 the merits for purposes of res judicata analysis.  *Stewart v. U.S. Bancorp*, 297 F.3d 953, 957 (9th
12 Cir. 2002); *Federated Dept. Stores, Inc. v. Moite*, 452 U.S. 394, 399, n.3 (1981) (citations
13 omitted).  The Iowa Court, certainly a court of competent jurisdiction, dismissed Wright's
14 Complaint for failure to state a claim upon which relief can be based after finding that Wright
15 failed to allege that Goodman acted under the color of law in his supposed threats to Wright.
16 *Wright*, 395 F. Supp. 2d at 800.
17       For these reasons, the Court finds that the doctrine of res judicata binds this Court
18 to the Iowa Court's finding that Wright failed to allege that Goodman acted under the color of law.
19 Accordingly, Wright cannot maintain a § 1983 action and it must therefore be dismissed.
20 **II.  42 U.S.C. § 1985(3)**
21       To maintain a successful 42 U.S.C. § 1985(3) action, a plaintiff must allege and
22 prove the following: "(1) a conspiracy; (2) for the purpose of depriving, either directly or
23 indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges
24 and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a
25 person is either injured in his person or property or deprived of any right or privilege of a citizen of
26 the United States."  *United Broth. of Carpenters and Joiners of America, Local 610, AFL-CIO v.*

*Scott*, 463 U.S. 825, 828-29 (1983).  Because Wright's § 1983 action was dismissed, it follows that his § 1985(3) conspiracy claim must also be dismissed.

The absence of a deprivation of rights under a § 1983 action precludes a conspiracy claim under § 1985(3) predicated on the same allegations.  *Caldeira v. County of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989) (*citing Cassettari v. Nevada County, Cal.*, 824 F.2d 735, 739 (9th Cir. 1987)).  This is because a § 1985(3) claim, like a § 1983 action, requires the plaintiff to "allege facts showing deprivation of rights secured by the Constitution or laws of the United States under color of state law."  *Giannini v. Real*, 911 F.2d 354, 359 (9th Cir. 1990)(*citing Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 624 (9th Cir. 1988).  Hence, unless the plaintiff can prove a deprivation of rights under § 1983 by a person acting under the color of law, he cannot establish a conspiracy to deprive him of those rights under § 1985(3).

In the case at bar, the Court dismissed Wright's § 1983 claim because he failed to allege that Goodman acted under the color of law.  Consequently, Wright could not be deprived of his First Amendment rights, as alleged, by a person acting under the color of law.  Without such a deprivation of rights, there certainly can exist no conspiracy to deprive him of those rights.

Therefore, Wright's  cannot maintain his § 1985(3) conspiracy claim and it will be dismissed.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (#19) is GRANTED.

Dated:  August 25, 2006.

_____
**ROGER L. HUNT**
**United States District Judge**